UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Rahesh Kishor Waghela,<br><br>Defendant. | Case No. 18-cr-0168 (JRT/HB)<br><br>**REPORT AND RECOMMENDATION** |

Diane Dodd, United States Attorney's Office, 600 U.S. Courthouse, 300 Fourth Street South, Minneapolis, Minnesota 55415, for United States of America

Daniel S. Le, Le Law Group, 333 Washington Avenue North, Suite 415, Minneapolis, Minnesota 55415, for Rahesh Kishor Waghela

HILDY BOWBEER, United States Magistrate Judge

This case came before the undersigned United States Magistrate Judge for a pretrial motions hearing on September 4, 2018. The case has been referred for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. In this Report and Recommendation, the Court will address Defendant Rahesh Kishor Waghela's Motion for Dismissal of Indictment [Doc. No. 15] and Motion to Suppress Statements, Admissions, and Answers [Doc. No. 21]. The parties' nondispositive motions were addressed in a separate Order [Doc. No. 35]. For the reasons set forth below, the Court recommends that the motion to suppress and the motion to dismiss be denied.

I.      **Factual and Procedural Background**

Defendant Rahesh Kishor Waghela, a citizen of India, was issued a temporary visa on May 24, 2005, with permission to remain in the United States until August 23, 2005. (Gov't's Resp. Ex. 3 [Doc. No. 40-3].) A notice to appear before an immigration judge was issued by the U.S. Department of Homeland Security on May 21, 2012. (*Id.*) On August 27, 2012, an immigration judge entered an order granting Defendant's application for voluntary departure, with the proviso that if Defendant did not voluntarily depart by September 26, 2012, the order would be considered an order of removal to India in the alternative. (Gov't's Resp. Ex. 4 [Doc. No. 40-4].) Defendant did not voluntarily depart, and a warning was issued on October 2, 2012. (Gov't's Resp. Ex. 5 [Doc. No. 40-5].) Defendant was ordered removed on September 26, 2012. (*Id.*) Defendant refused to complete a passport application and was charged in the United States District Court for the Middle District of Pennsylvania with violating 8 U.S.C. § 1253(a)(1)(A) and (C). (Gov't's Resp. Ex. 10 [Doc. No. 40-10].) The Indictment was later dismissed without prejudice after Defendant agreed to cooperate in obtaining travel documents for his removal. (*Id.*)

Defendant remained in the custody of U.S. Immigration and Customs Enforcement (ICE) until August 19, 2013, when he was released on an Order of Supervision. (Gov't's Resp. Ex. 12 [Doc. No. 40-12].) On April 9, 2018, a Notice of Revocation of Release was issued, informing Defendant that he would be taken into ICE custody for the purpose of removing him to India. (Gov't's Resp. Ex. 14 at 5 [Doc. No. 40-14].) The notice explained that recent discussions with India had given rise to a significant likelihood of

2

his removal in the reasonably foreseeable future. (*Id.* at 3.) On April 13, 2018, a Warrant for Arrest of Alien was issued, and Defendant was taken into ICE custody. (*Id.* at 1; Gov't's Resp. Ex. 16 at 3 [Doc. No. 40-16].) Defendant was scheduled to depart the United States on June 5, 2018, but he allegedly verbally and physically resisted ICE officers at the airport and refused to board the airplane. (Gov't's Resp. Ex. 17 [Doc. No. 40-17].) The commercial airline declined to transport Defendant, and he was returned to ICE custody. (*Id.*)

On July 10, 2018, Defendant was charged by Indictment with one count of Failure to Depart, in violation of 8 U.S.C. § 1253(a)(1)(C). (Indictment [Doc. No. 1].) The Indictment alleges that Defendant is an alien against whom a final order of removal was entered and that he connived, prevented, and hampered his departure from the United States on June 5, 2018. (*Id.*)

Defendant filed several pretrial motions on August 8, 2018, including the motion to suppress and the motion to dismiss. The Court held a hearing on the motions on September 4, 2018, and after a period for post-hearing briefing by both parties, took the motions under advisement on September 28, 2018.

## II.   Defendant's Motion to Dismiss Indictment

Defendant originally moved to dismiss the Indictment on the grounds that 8 U.S.C. § 1253(a)(1)(C) "is facially unconstitutional for vagueness and fails to invoke the Court's jurisdiction." (Def.'s Mot. Dismiss at 1 [Doc. No. 15].) Because the motion did not expound on the factual or legal bases for the motion, the Court ordered Defendant's counsel to present that information through oral argument at the motion hearing on

September 4, 2018.  (Order at 2, Aug. 27, 2018 [Doc. No. 31].)  Instead, Defendant filed a written memorandum on August 29, 2018, setting forth the factual and legal bases for the motion.  Defendant contends that the Indictment should be dismissed on the following grounds: (1) 8 U.S.C. § 1253(a)(1)(C) is void for vagueness, because it does not provide adequate notice of proscribed conduct and because it allows for arbitrary enforcement; (2) 8 U.S.C. § 1253(a)(1)(C) is unconstitutional as it was applied to him, because of due process violations in the underlying removal proceedings; and (3) the Government's evidence does not establish that Defendant "connived," as a matter of law.  (*See* Def.'s Mem. Supp. Mot. Dismiss at 1, 4, 6, 9-10 [Doc. No. 33].)

### A.  Void for Vagueness

Defendant argues that 8 U.S.C. § 1253(a)(1)(C) is void for vagueness because it does not provide adequate notice of proscribed conduct and because it allows for arbitrary enforcement.  (Def.'s Mem. Supp. Mot. Dismiss at 4.)  The legal principle that a vague statute is void is grounded in the Fifth Amendment's guarantee of due process.  *United States v. Washam*, 312 F.3d 926, 929 (8th Cir. 2002).  Generally, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

In Defendant's memorandum filed in response to the Court's Order requiring him to provide the factual and legal bases for his motion to dismiss, Defendant observes, correctly, that "vagueness challenges to statutes which *do not* involve First Amendment

4

freedoms must be examined in the light of the facts of the case at hand." (Def.'s Mem. Supp. Mot. Dismiss at 4 (quoting *United States v. Mazurie*, 419 U.S. 544, 550 (1975)) (emphasis added).) Defendant then goes on to cite case authority that governs a court's determination of "whether a statute is unconstitutionally vague *on the facts at hand*." (*Id.* (citing *Kolender*, 461 U.S. at 357) (emphasis added).) This argument and legal authority indicate that Defendant is *not* raising a First Amendment challenge to § 1253(a)(1)(C), and indeed, Defendant does not argue anywhere in the memorandum that his speech was protected by the First Amendment or that § 1253(a)(1)(C) violates the First Amendment.[1] Consequently, the Court deems any such argument waived and proceeds to a

---

[1] Defendant contends in his surreply, however, that "the uncontested facts in the record show that § 1253(a)(1)(C) would be unconstitutional to [him] for merely speaking and reasonably asserting concerns for his rights as provided by the INA (and ICE regulations). To prevent his reasonable behavior would have violated the First Amendment." (Def.'s Mem. Resp. Gov't's Reply ("Def.'s Surreply") at 5 [Doc. No. 43].) Defendant offers no other argument or legal support for his position. Even if the Court were to consider this argument instead of deeming it waived, the Court would find that the First Amendment was not violated. As best the Court can deduce, Defendant may have intended to raise an "as applied" challenge. In this context, "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). The "government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.* at 377. Here, the enactment of § 1253(a)(1)(C) was a valid exercise of Congressional power. The statute furthers the government's legitimate interests in regulating its borders and effectuating the removal of individuals who are here unlawfully, and those interests are not related to the suppression of free speech. Finally, the statute's limited application to speech is no greater than necessary to further the interest, in that only speech made for the purpose of preventing and hampering removal is prohibited.

5

determination of whether § 1253(a)(1)(C) is unconstitutionally vague on the facts at hand. *See United States v. Washam*, 312 F.3d 926, 929 (8th Cir. 2002). In making this determination, courts apply a two-part test. *Id.* "First, the statute must provide adequate notice of the proscribed conduct." *Id.* (citing *Kolender*, 461 U.S. at 357). "Second, the statute must not lend itself to arbitrary enforcement." *Id.* (citing *Kolender*, 461 U.S. at 358).

The statute at issue, 8 U.S.C. § 1253(a)(1)(C), provides for a penalty of a fine and imprisonment when "[a]ny alien against whom a final order of removal is outstanding by reason of being a member of any of the classes described in section 1227(a) of this title . . . connives or conspires, or takes any other action, designed to prevent or hamper or with the purpose of preventing or hampering the alien's departure pursuant to such order . . . ." Defendant argues that the phrase "*takes any other action*[] designed to prevent or hamper or with the purpose of preventing or hampering the alien's departure" did not give him adequate notice of the prohibited criminal conduct. (Def.'s Mem. Supp. Mot. Dismiss at 5) (emphasis added by Defendant). The Court disagrees. The challenged language clearly prohibits any action intended to prevent or obstruct an alien's removal. Although the phrase "any other action," standing alone, could be considered vague, the phrase is narrowed by the language "designed to prevent or hamper or with the purpose of preventing or hampering the alien's departure." Thus, the challenged language, read in full, provides fair notice of what is prohibited: taking any action designed to prevent or hamper an alien's departure from the United States.

The prohibition of a wide range of actions does not necessarily render a statute

6

unconstitutionally vague.  Here, § 1253(a)(1)(C) "creates a broad obligation for a removable alien to avoid hindering the departure process, and has been found applicable in a wide variety of circumstances, from physical resistance to the making of false or misleading statements."  *United States v. Etenyi*, No. 15-10102-JTM, 2016 WL 6462037, at *4 (D. Kan. Nov. 1, 2016), *aff'd*, 720 F. App'x 445 (10th Cir. 2017) (citing *United States v. Mola*, 598 F. App'x 416 (6th Cir. 2015) (refusing handcuffs); *United States v. Talbot*, 22 F. Supp. 3d 419, 424 (M.D. Pa. May 20, 2014) (refusing to leave vehicle), *aff'd*, 611 F. App'x 74 (3d Cir. 2015); *United States v. Diallo*, 569 F. App'x 221, 222 (6th Cir. 2014) (per curiam) (claiming other citizenship); *United States v. Peynado*, 385 F. App'x 97, 101-02 (3d Cir. 2010) (making false statements)).

      Defendant next argues that § 1253(a)(1)(C) did not provide any standards to govern the actions of the U.S. Immigration and Customs Enforcement ("ICE") officers.  (Def.'s Mem. Supp. Mot. Dismiss at 6.)  He explains that he was handcuffed and in the custody of two ICE agents (and thus did not constitute a threat to public safety), and that the airplane pilot made the ultimate determination that he should exit the airplane.  The pilot's determination, however, was based on Defendant's alleged loud and disruptive conduct, and such conduct in similar circumstances has been found to constitute a violation of § 1253(a)(1)(C).  *See United States v. Ngay*, 708 F. App'x 192, 193 (5th Cir. 2018) (where airline personnel refused to allow the defendant to board the airplane, upholding the jury's conclusion that the defendant's screams, comments, and physical resistance were done "with the purpose of preventing or hampering" his removal and thus violated § 1253(a)(1)(C)).

As to any general argument that the statute is vague because it lends itself to arbitrary enforcement, the Court finds that § 1253(a)(1)(C) establishes sufficient guidelines to govern law enforcement. The statute requires that the individual be an "alien against whom a final order of removal is outstanding," that the individual be a member of one of the classes of deportable aliens listed in 8 U.S.C. § 1227, and that the individual connived, conspired, or acted to prevent or hamper, or with the purpose of preventing or hampering, his or her removal. The statute provides a clear standard for determining when an individual has violated the statute, and it does not permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *See Smith v. Goguen*, 415 U.S. 566, 575 (1974).

## B.    Alleged Due Process Violations in the Underlying Removal Proceedings

Defendant argues that his due process rights were violated in the underlying removal proceedings. (Def.'s Mem. Supp. Mot. Dismiss at 3, 6.) He does not challenge the validity of the final removal order,[2] but the attempted execution of that order. (*See* Def.'s Mem. Resp. Gov't's Reply ("Def.'s Surreply") at 1 [Doc. No. 43].) Specifically, Defendant argues that ICE should have given him prior notice if it considered him to be in violation of the Order of Supervision and afforded him a hearing before attempting to remove him. (*Id.* at 4-5.)

---

[2] Though Defendant does not challenge the validity of the final removal order, the Court notes that a criminal defendant charged with violating § 1253(a) may challenge the validity of the final removal order in the criminal proceeding through a pretrial motion, as long as the validity of the order has not already been judicially determined. 8 U.S.C. § 1252(b)(7)(A)

The particular due process arguments raised by Defendant are not cognizable on a motion to dismiss the indictment. On a motion to dismiss an indictment, the Court must consider the facts alleged in the indictment as true, *see United States v. Birbragher*, 603 F.3d 478, 481 (8th Cir. 2010), and there is no due process violation inherent in the allegations of the Indictment. Rather, Defendant is challenging ICE's revocation of the Order of Supervision and failure to afford him a hearing before attempting to remove him. This Court lacks jurisdiction to consider such challenges. Defendant's recourse for those actions, if any, lies with ICE or in a court via a petition for writ of habeas corpus. Alternatively, Defendant may seek to raise a justification defense at trial. *See United States v. Diabate*, 644 F. App'x 512, 514 (6th Cir. 2016); *United States v. Talbot*, 611 F. App'x 74, 77 (3d Cir. 2015).

### C.  Sufficiency of the Government's Evidence

Finally, Defendant argues that the Government's evidence does not establish that he "connived" to prevent or hamper his departure. (Def.'s Mem. Supp. Mot. Dismiss at 10; Def.'s Surreply at 2.) He specifically challenges the description of facts and circumstances contained in the reports of ICE Deportation Officers Richard Corbit and Miguel Munoz, the ICE Notice of Revocation of Release, and the ICE Order of Supervision Personal Report Record. (Def.'s Surreply at 2-5.) He submits that it was "factually impossible for [him] to willfully connive or take any action designed to hamper or prevent his removal that day as it was not . . . within his power or actions to do so." (*Id.* at 4.)

A motion to dismiss an indictment may not be utilized to raise a pretrial challenge

9

to the sufficiency of the Government's evidence.  *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (quotation omitted).  The Court does not agree that it would be "factually impossible" for an individual to connive or act to prevent his or her removal from the United States.  To the contrary, courts have upheld the convictions of individuals under § 1253(a)(1)(C) based on acts such as refusing to exit a vehicle and making false statements.  *See, e.g.*, *Talbot*, 22 F. Supp. 3d at 424 (finding that defendant acted with the purpose of preventing his removal and prevented his removal by refusing to exit a vehicle and holding on the interior cage); *United States v. Peynado*, 385 F. App'x 97, 101 (3d Cir. June 24, 2010) (finding that making false statements hindered removal so as to violate § 1253(a)(1)(C)).

To the extent Defendant challenges the sufficiency of the Indictment, an indictment is generally "sufficient if its language tracks the statutory language."  *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008).  Here, the Indictment alleges that on or about June 5, 2018, Defendant—an alien against whom a final removal order was outstanding—connived and acted to prevent and hamper his departure, with the purpose of preventing and hampering his departure, from the United States.  (Indictment at 1.)  The Indictment not only describes the offense in the words of the statute but also includes the specific date of the alleged offense.  The language "fairly informs [Defendant] of the charge against which he must defend" and "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense," *see Hamling v. United States*, 418 U.S. 87, 117 (1974), which are the two concerns underlying the sufficiency requirement.

### III. Defendant's Motion to Suppress Statements

Defendant moves to suppress "any and all pre-indictment statements made" after he was allegedly taken into ICE custody on April 13, 2018. (Def.'s Mem. Supp. Mot. Suppress at 12-13 [Doc. No. 33]; *see* Def.'s Surreply at 5-6.) He contends that any such statements were made while he was in custody and subject to interrogation.

Defendant's original motion to suppress did not identify the statements at issue or the specific legal basis for the relief requested. (*See* Def.'s Mot. Suppress [Doc. No. 21].) The Court therefore ordered Defendant's counsel to confer immediately with the Government's counsel, as required by D. Minn. LR 12.1(b), and to file a statement identifying the particular statement or statements in dispute and the legal basis for their exclusion. (Order at 2, Aug. 27, 2018 (citing Fed. R. Crim. P. 12(b); D. Minn. LR 12.1(b); *United States v. Edwards*, 563 F. Supp. 2d 977, 994-95 (D. Minn. 2008)) [Doc. No. 31].) In response to the Court's order, Defendant filed a memorandum in which he identified an incident on June 5, 2018, as the basis for his motion:

> [O]n June 5, 2018, Mr. Waghela was shocked when he was suddenly taken to MSP Airport by ICE officers Richard Corbit and Miguel Munoz in hand restraints to be taken back to India by plane. Mr. Waghela requested to speak with the Indian embassy as this was a violation of his constitutional rights which the agents had refused to regard. Mr. Waghela was then escorted to the back of an empty plane (preboard) as requested by the ICE agents. Mr. Waghela again asked to speak with the pilot who he explained his objections to regarding the illegal removal being done by ICE. Officer Corbit then spoke with the pilot separately away from Mr. Waghela. Officer Corbit was informed by the pilot that the agents should exit the plane with Mr. Waghela. Mr. Waghela was removed from the plane and airport without further incident.

(Def.'s Mem. Supp. Mot. Suppress at 2-3.) Defendant also provided written Memoranda

11

of Investigation from Officers Corbit and Munoz documenting the June 5 incident. (*Id.* at 3, 12-13; Def.'s Exs. 5, 6 [Doc. No. 33-2].)

Officer Corbit's Memorandum of Investigation documents the attempted removal of Defendant to India on June 5, 2018. (Def.'s Ex. 5 at 1.) At the airport, Defendant asked Officer Corbit to see his travel document to India. (*Id.*) Officer Corbit showed him the documents, and Defendant "made some comments with regards to" the document, specifically that the photograph was not him. (*Id.*) Defendant was handcuffed at the time, and the handcuffs were concealed under his sweatshirt. (*Id.*) Once in the seating area at the airport gate, Defendant asked to speak to the Embassy of India about the travel documents and said the travel documents were fake. (*Id.*) Officer Munoz contacted a consular officer of India, who spoke to Defendant, but Defendant was not satisfied with the conversation and asked to speak to the Embassy Headquarters for India in New York. (*Id.*) Defendant became agitated and refused to look at additional documents and correspondence between the Consulate of India and ICE. (*Id.*) The consular officer spoke with Defendant again, and Defendant insisted that he had not been interviewed by the Embassy. (*Id.*) Defendant began "creating a scene by raising his voice so other passengers would pay attention to what was happening." (*Id.*)

Once the gate agent told Officer Corbit it was time to board, Defendant "became belligerent" and "raised his arms into the air dislodging the hooded sweatshirt and allowing the sweatshirt to fall to the ground." (*Id.*) Defendant "began to yell and create a scene to avoid boarding the aircraft." (*Id.*) He yelled "that ICE was going to kill him" and that "ICE was returning him under a false document." (*Id.*) Defendant slowed his

12

walking pace, but Officers Corbit and Munoz held firm and escorted him onto the airplane. (*Id.*) Defendant continued to yell as he was seated at the back of the aircraft. (*Id.* at 2.) Eventually, the airplane captain refused to allow the escort, and Officers Corbit and Munoz escorted Defendant off the plane. (*Id.*) After they walked off the jet bridge, Defendant resumed yelling and screaming. (*Id.*) He asked a bystander who was recording the incident to continue the recording. (*Id.*) Defendant yelled to a transit police officer that ICE was going to kill him. (*Id.*) Once they exited the airport, Defendant stopped yelling but continued to be belligerent. (*Id.*) Officer Munoz's Memorandum of Investigation documents similar statements and circumstances. (Def.'s Ex. 6 at 1-2.)

Based on Defendant's memorandum filed in response to the Court's order to identify the statements at issue, the Court considers the only statements in dispute to be those made during the incident at the airport on June 5, 2018. "[A]s the moving party, at a minimum it is defendant's burden to come forth with some evidence and argument to support his position that evidence, statements or a witness identification should be suppressed." *United States v. Edwards*, 563 F. Supp. 2d 977, 994 (D. Minn. 2008), *aff'd sub nom. United States v. Bowie*, 618 F.3d 802 (8th Cir. 2010)); *see United States v. Starks*, 193 F.R.D. 624, 629 (D. Minn. 2000). When a defendant offers no facts or legal arguments to support his position, that suggests "either that he has waived or abandoned the motions or that they were frivolous." *Edwards*, 563 F. Supp. 2d at 994. Accordingly, here, the Court deems waived or abandoned any challenge to other statements.

Before proceeding to a discussion of the statements made on June 5, the Court

13

must also point out that neither Defendant nor the Government provided any testimonial evidence on the motion to suppress.  The only evidence of the statements and surrounding circumstances was submitted through the Memoranda of Investigation by Officer Corbit and Officer Munoz.

Under *Miranda v. Arizona*, "the prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  384 U.S. 436, 444 (1966).  Those procedural safeguards are met when, "[p]rior to any questioning, the person [is] warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney . . . ."  *Id.*  *Miranda* warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way."  *See id.*; *see also Stansbury v. California*, 511 U.S. 318, 322 (1994).

In deciding whether a person was "in custody," courts examine "the presence and extent of physical and psychological restraints placed on the person's liberty during the interrogation in light of whether a reasonable person in the suspect's position would have understood his situation to be one of custody."  *United States v. Axsom*, 289 F.3d 496, 500 (8th Cir. 2002) (quoting *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990)) (internal quotation marks omitted); *see also United States v. Czichray*, 378 F.3d 822, 828 (8th Cir. 2004).  The Eighth Circuit Court of Appeals has identified six common indicia of custody:

(1) whether the suspect was informed at the time of questioning that the

> questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

*Griffin*, 922 F.2d at 1349. The first three indicia weigh against finding that custody existed. *Axsom*, 289 F.3d at 500-01. Conversely, the last three indicia weigh in favor of custody. *Id.* at 501.

Defendant argues that the statements he made on June 5 are inadmissible because he was in custody and not advised of his *Miranda* rights. He does not address the element of interrogation.

There can be little dispute that Defendant was in custody during the June 5 incident. He was not free to leave the area, he was handcuffed, and he was under the deportation officers' control at all times during the attempted removal. His movements were restrained. He did not initiate contact with the officers, nor did he acquiesce to anything they were saying or doing. Though the incident occurred in an airport, Defendant's immediate surroundings were dominated by the officers, and Defendant remained in custody after the incident. The only factor weighing against a finding of custody is that the officers did not employ strong arm tactics or deceptive stratagems.

The component missing here is interrogation. *Miranda* warnings are required only when an individual is subject to interrogation. *See United States v. McGlothen*, 556 F.3d 698, 701 (8th Cir. 2009). "Interrogation . . . must reflect a measure of compulsion above

15

and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). "Interrogation" under *Miranda* means not only "express questioning, but also . . . any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301. Although the latter definition focuses on the suspect's perspective, "the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." *Id.* at 302. In other words, police officers "cannot be held accountable for the unforeseeable results of their words or actions." *Id.* at 301-02. "Whether a particular statement constitutes an interrogation depends upon the circumstances of each case, but we generally do not find a mere factual statement to be an interrogation where it serves to inform the suspect as to the status of his case or the investigation into his activities." *United States v. Hull*, 419 F.3d 762, 767 (8th Cir. 2005). "Voluntary statements not in response to an interrogation are admissible with or without *Miranda* warnings." *United States v. McGlothen*, 556 F.3d 698, 701 (8th Cir. 2009).

The Court finds here that Defendant's statements, questions, and other utterances on June 5 were voluntary and not made in response to express questioning or its functional equivalent. The deportation officers' actions such as showing Defendant the travel documents and contacting the consular officer on his behalf were undertaken merely to inform Defendant about the status of and basis for his removal. Defendant's questions about his travel documents and requests to speak with a consular representative

were voluntary and not in response to interrogation, as were his statements about the photograph on the travel documents and the authenticity of the travel documents. The statements and other utterances Defendant yelled and screamed were also spontaneous and voluntary, according to the reports of the deportation officers. Consequently, the Court recommends that Defendant's motion to suppress statements be denied.

Accordingly, based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Rahesh Kishor Waghela's Motion for Dismissal of Indictment [Doc. No. 15] be **DENIED**; and

2. Defendant Rahesh Kishor Waghela's Motion to Suppress Statements, Admissions, and Answers [Doc. No. 21] be **DENIED**.

Dated:  October 25, 2018

                                         s/ *Hildy Bowbeer*
                                         HILDY BOWBEER
                                         United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.